**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

UNITED STATES OF AMERICA,      :
                                   :
       Plaintiff,                :
                                   :
vs.                                :       1:04-CV-76 (WLS)
                                   :
TERRELL COUNTY, GEORGIA et al.,      :
                                   :
       Defendants.            :
_____

## <u>ORDER</u>

Before the Court is the United Statas of America's (the "Goverment") motion for summary judgment.  (Doc. No. 46).  For the following reasons, the Government's motion for summary judgment (Doc. No. 46) is **GRANTED.**

## <u>BACKGROUND</u>

Defendant Terrell County, Georgia (County) is a governmental subdivision created under the laws of the State of Georgia.  Defendant Wilbur T. Gamble Jr. ("Gamble") is the Chairman of the Terrell County Board of Commissioners and has served as the chief administrator of the County government for 36 years.  Elected in 1992, Defendant John W. Bowens ("Sheriff") is the Sheriff of Terrell County and is responsible for the day-to-day operations of the Terrell County Jail ("Jail").  In his official capacity as Sheriff, the Sheriff has custody, control, and charge of the Jail and Jail inmates.   Defendants Larry Atherton, Lucius Holloway Sr., Bob Rainey, and Blake Vann are members of the Terrell County Board of Commissioners, who are charged with the authority of funding and claims resolution over the Terrell County Jail.  (Docs. 46, 54).

The parties agree and it is uncontested that on October 3, 1994, the United States notified Defendant Bowens, the Terrell County Sheriff, and Defendant Terrell County, by and through the Terrell County Board of Commissioners, that it planned to investigate conditions

at the Jail pursuant to the Civil Rights of Institutionalized Persons Act ("CRIPA"), 42 U.S.C. § 1997 (2005).   After inspecting the Jail, the United States issued a letter of findings on June 1, 1995, in which the United States concluded that conditions at the Jail relating to, *inter alia*, medical care, mental health care, protection from harm, environmental health and safety, and fire safety violated the inmates' constitutional rights. The United States detailed extensive evidence supporting its findings and included numerous suggested remedial measures to alleviate these alleged unconstitutional conditions.  *Id*.

The Government maintains that it conducted subsequent inspections in 1997, 2001, 2002, and 2003.  (Doc. 46).   According to the Government, each time, the United States found that conditions at the Jail were virtually identical to the 1995 unconstitutional conditions; provided detailed evidence to Defendants supporting these findings; and recommended remedial steps to address these serious deficiencies.   While the Government maintains that Defendant Sheriff has not disputed the accuracy of many of the findings from 1995 through 2002, Defendant Sheriff admits only receiving the 1995 findings letter and the 2005 Inspection Reports, but states that there is a genuine issue of material fact as to whether Defendant received any of the other reports.  (Docs. 46,  54).

It is however not disputed that Defendants received Terrell County Grand Jury Reports in 2002 and 2003 that found that conditions at the Jail were "inadequate, inhuman, and unsafe."  Defendant Sheriff Bowens concedes the accuracy of these findings.  Defendant Sheriff Bowens brought in an expert consultant, John Southern, who found that conditions at the Jail were unsafe.  *Id*.   As stated earlier, Defendant Bowens does not dispute these facts, however, he maintains that the problems referenced in the Terrell County Grand Jury Reports either were beyond his control or are the result of a very old structure.  (Doc. 54).

### A.  Current Conditions at the Jail

The Government maintains that Conditions at the Jail are grossly deficient in the areas of medical care, mental health care, protection from harm, environmental health and safety,

2

and fire safety.

     **1.**     **Medical Care**

The Government argues, and Defendants do not dispute entirely, that systemic deficiencies at the Jail deny or improperly delay medical treatment to inmates with serious medical needs. (Doc. 46; *see also* Doc. 54). The parties further agree that Terrell County Health Department nurses hired in 2004 by Defendants to oversee medical care at the Jail quit working there after several months. *Id*. According to the Government, the most serious deficiencies with the Jail's medical care are as follows: 1) denial of medical care to inmates, including, from January 2003 to July 2005, the refusal 70 of 118 times to allow emergency medical services ("EMS") transport of inmates in situations where Terrell County Emergency Medical Technicians ("EMT") recommended emergency medical treatment, 2) improper delays in access to primary or emergency medical care due to staffing shortages, the slowness of medical approval procedures, and/or the Jail's policy on opening cell, 3) the absence of any Jail staff onsite or on call with medical training or qualifications, 4) the failure to provide medical screenings by qualified professionals for illnesses, in particular, infectious diseases, and 5) the absence of a medical records system, medical examination room, and necessary medical equipment and supplies. (Doc. 46). While the parties agree that Jail staff are not permitted to open cell doors unless a "certified law enforcement officer" such as a Terrell County Sheriff's Department deputy is present, they disagree sharply that the policy extends to medical emergencies. (Docs. 46, 54). The Government alleges that inmate access to emergency medical care has been improperly delayed as a result of Jail staff waiting for a law enforcement officer to arrive before staff opened a cell and provided EMTs an opportunity to examine the inmate. (Doc. 46). Defendant Sheriff disputes the foregoing and maintains there to be genuine issues of material fact as to the same. (Doc. 54).

According to the Government, inmates at the Jail have suffered serious harm as a result of these grossly inadequate practices. (Doc. 46). Inmates with serious complications

from diabetes or with alarmingly high blood pressure have not received medical treatment despite suffering life-threatening symptoms.  *Id*.  Inmates have been denied access to their prescription medications, thereby exacerbating their serious illnesses.  *Id*.  Inmates with serious medical needs, including those requiring surgery, have been ignored until the inmates were transferred to another correctional facility.  (Doc. 46).  Defendant Sheriff disputes the foregoing and maintains there to be genuine issues of material fact as to the same.  (Doc. 54).

Defendants further dispute findings made by the United States' medical expert, Dr. Robert Greifinger, and provided to Defendant in May 2005, that the Jail's medical care is seriously deficient.  (Doc. 54; *see also* Doc. 46).  The Government alleges that Defendants have failed to implement the recommendations from his May 2005 report that were designed to help alleviate the serious deficiencies with mental health care.  *Id*.  Defendant maintains that there is a genuine issue of material fact as to whether the information contained within the Dr. Greifinger's report, if proven true, supports the Government's contention that Defendant Sheriff has been willfully indifferent to such evidence.  Defendant maintains that any decisions regarding the implementation of said recommendations are beyond his control as Sheriff, and rest with Defendant Board of Commissioners.  (Doc. 54).  Defendant further disputes the Government's allegation that Dr. Greifinger made findings in 2003 which were forwarded to Defendants.  *Id*.

**2.     Mental Health Care**

Defendants maintain that there is a genuine issue of material fact as to the Government's contention that inmates at the Jail do not receive appropriate mental health treatment, particularly when they have displayed a strong likelihood of committing suicide. (Docs. 46, 54).  While the parties agree that since 2003, there have been at least two suicides and at least nine suicide attempts at the Jail, including four in 2005, Defendant Sheriff disputes the Government's contention that said fact shows willful indifference in protecting the rights of Jail inmates.  *Id*.

4

The Government alleges that the following facts already discussed in relation to medical care, are equally true for mental health care at the Jail: 1) denial of mental health care for inmates with serious mental health needs, 2) improper delays in access to mental health treatment due to lack of staff, approval processes, and/or the Jail's celldoor policy, 3) the absence of any Jail staff onsite or on call with mental health training or qualifications, 4) the failure to screen inmates properly for mental illnesses, and 5) the absence of a mental health records system. (Doc. 46).  Defendants similarly dispute the same. *See supra* Part B, 1.  The parties agree, however, that there are serious deficiencies in the handling of Jail inmates at serious risk of self-injury.  Inmates suspected of being potentially suicidal are placed in isolation cells with cell bars and protruding fixtures that permit inmates to hang themselves. *Id*.  While the parties agree that since 2003, two inmates have hung themselves to death while in these isolation cells, while other inmates placed in these same cells have attempted to do so, Defendant Sheriff maintains that the physical layout of the structure and lack of further family information are factors to be considered, the same which are beyond Sheriff's control.  *Id*. There is no dispute as to the fact that a suicide watch is a regularly scheduled observation of a Jail inmate in an isolation cell.  The parties further agree that for acutely suicidal inmates, constant watch surveillance, *i.e.*, direct, in-person observation of inmates, is necessary.  *Id*.

The Government maintains that since December 2004, there have been at least three suicide attempts involving three different inmates where Jail staff improperly delayed entering the cell to intervene due to the Jail's cell-door policy. (Doc. 46).  Additionally, according to the Government, inmates who have attempted suicide or displayed other obvious signs of mental illness have not received timely mental health treatment.   The Government once more proffers Dr. Greifinger for expert testimony that mental health care at the Jail is grossly inadequate.  *Id*.  The Government alleges that Defendants have failed to implement the recommendations from his May 2005 report that were designed to help alleviate the serious deficiencies with mental health care.  *Id*.  Defendant maintains that there is a genuine issue of

material fact as to whether the information contained within the Dr. Greifinger's report, if proven true, supports the Government's contention that Defendant Sheriff has been willfully indifferent to such evidence. Defendant maintains that any decisions regarding the implementation of said recommendations are beyond his control as Sheriff, and rest with Defendant Board of Commissioners. (Doc. 54).

### 3.    Protection from Harm

The Government maintains that inmates are not sufficiently protected from violence at the hands of other inmates due to the Jail's physical structure and Defendants' practices and procedures. (Doc. 46). Defendants admit the same, but maintain that it is virtually impossible to isolate or segregate special needs inmates because of the physical structure which houses the inmates. (Doc. 54). The parties do not dispute that the physical configuration of the Jail obstructs the jailers' ability to monitor inmate housing areas properly. (Docs. 46, 54). It is further undisputed that there are no security cameras in the cells except for a two-bed isolation cell. *Id*. However, Defendants maintain that they can neither admit or deny the Government's allegation that as a result of poor monitoring capacity, inmate fights occur without the knowledge of Jail staff. *Id*. Nevertheless it is undisputed that the Jail's physical structure prevents Defendants from sufficiently separating predatory from vulnerable inmates or those with "special needs." The parties further agree that the Jail does not have sufficient staff to oversee the inmates and ensure their safety. *Id*.

The Government maintains, and Defendants disagree, that the previously discussed Jail policy regarding opening cell doors applies to inmate fights as well, which has led to jailers observing fights but failing to intervene until a law enforcement officer arrived at the cell. *Id*. The Government claims that the consequences of these serious protections from harm problems have included mentally ill and "special needs" inmates getting into fights after being inappropriately placed in the inmate dormitories and inmates getting into fights so serious as to require medical attention at the Jail and/or a hospital. (Doc. 46). Defendant

Sheriff disputes these claims to the extent that the same would suggest willful indifference on his behalf with respect to Sheriff's actual ability to prevent injuries in this scenario.  (Doc. 54).   Defendants do not dispute, however, that the United States' correctional security expert, Steve Martin, found that conditions at the Jail significantly threaten inmate safety.  (Docs. 46, 54). Neither Defendant questions Mr. Carson's qualifications.  *Id.*

### 4.      Environmental Health and Safety

The Government maintains that living conditions at the Jail are "inadequate" and "inhumane."  (Doc. 46).   While it is undisputed that roaches, mice, and other vermin are present in the facility, Defendants maintain that their presence does amount to an "infestation."  (Doc. 54; *see* Doc. 46).   The Government maintains that plumbing and sewage fixtures either do not work, routinely leak, or even flood cells.  (Doc. 46).   Defendants agree in part and dispute in part; however, they do not state with specificity to which parts of the Government's allegation they agree and to which parts they disagree.  (Doc. 54).    However, Defendants definitively dispute the Government's allegation that Defendants do not take sufficient precautions to ensure food served to inmates does not cause food-borne illnesses. (Doc. 54; *see also* Doc. 46).   Defendants further dispute the accuracy of a statement made by Leonard Rice, the Government's environmental health and safety expert, that environmental conditions at the Jail threaten the health and safety of the inmates.  *Id.*   Defendants further maintain that they have no independent knowledge of Mr. Rice's qualifications, and therefore, are unable at this time to ascertain the validity of any statement he may make.  (Doc. 54).

### 5.      Fire Safety

The parties agree that the Jail is not safe in the event of a fire.   Defendant Sheriff further admits that the physical structure which houses the Jail is inherently unsafe and can only be corrected with a new facility.  (Docs. 46, 54).   It is undisputed that numerous factors contribute to the unsafe conditions at the Jail, including: 1) the widespread presence of highly combustible materials, 2) the absence of fire or smoke barriers within the Jail itself or within

the building housing the Jail, 3) the lack of an automatic sprinkler system, 4) the absence of smoke detectors in several cells, 5) seriously deficient evacuation procedures, 6) the lack of fire emergency training, and 7) the Jail's policy permitting inmates to have matches and lighters. *Id.* It is further undisputed that the Government's fire safety expert, Wayne Carson, concluded that inmates at the Jail are at high risk of injury and/or death due to fire and smoke, and that Defendant Sheriff does not disagree with Mr. Carson's 2005 report, the findings contained therein, or his recommendations to correct these problems. *Id.* Neither Defendant questions Mr. Carson's qualifications. *Id.*

## DISCUSSION

### I. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The Court is required to "resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences in his or her favor." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993) (quotations and citations omitted).

The moving party carries the initial burden of showing that there is an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). The substantive law governing the case determines which facts are material, and "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). For issues on which the non-movant bears the burden of proof at trial, the moving party "simply may show—that is, point out to the district court—that there is an absence of evidence to support the

non-moving party's case.  Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that  the non-moving party will be unable to prove its case."  Fitzpatrick, 2 F.3d at 1116 (quotations and citations omitted).

If the moving party fails to overcome this initial burden, the Court must deny the motion for summary judgment without considering any evidence, if any, presented by the non-moving party.  Fitzpatrick, 2 F.3d at 1116.  If, on the other hand, the moving party overcomes this initial burden, then the non-moving party must show the existence of a genuine issue of material fact that remains to be resolved at trial.  Id.  Moreover, the adverse party may not respond to the motion for summary judgment by summarily denying the allegations set forth by the moving party.  Rather, the adverse party "must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."  Fed. R. Civ. P. 56(e).

## II. ANALYSIS

The Government argues that it is entitled to summary judgment in this matter because the conditions at the Terrell County Jail ("Jail"or "Defendants") are substandard and violates the inmates constitutional rights.  Specifically, the Government contends that (1) the Jail provides constitutionally deficient medical care; (2) the Jail provides constitutionally deficient mental health care, to include but not limited to, suicide prevention; (3) the Jail provides constitutionally deficient protection from inmate-on-inmate violence; (4) the Jail provides a constitutionally deficient environment; and,  (5) the Jail provides constitutionally deficient fire protection or fire safety.  The Government maintains that there exist no genuine issue of material fact as to these claims and the Government is entitled to judgment as a matter of law.

In their response, Defendants Terrell County, Georgia, Wilbur T. Gamble, Jr, Larry Atherton, Sr, Lucius Holloway, Bob Rainey, Blake Vann (collectively "Terrell County Board of Commissioners" or "TCBOC")  state that they do not oppose a finding that the conditions at the Jail are unconstitutional.  These Defendants, however, request, that they have some say

in how any post-judgment jail is run.

Defendant Sheriff Bowens denies that he is responsible for the mistreatment of any inmates or is responsible for any acts or omissions that caused the Jail conditions to be constitutionally deficient.  Bowens maintains that if any inmates have been subject to unconstitutional conditions or that the Jail is constitutionally deficient, it is from the lack of funding from the Co-Defendants, Terrell County and the Terrell County Board of Commissioners, which has resulted in insufficient staff, supplies, training, equipment, medical personnel and supplies and an inadequate jail facility.[1]  Except as discussed below, Bowens takes little issue with the Government's statement of facts concerning the alleged constitutional conditions at the Terrell County Jail.

Pretrial detainees are protected by the Fourteenth Amendment's Due Process Clause, while convicted prisoners' rights stem from the Eighth  Amendment's Cruel and Unusual Punishment Clause.  See Hamm v. De Kalb County, 774 F.2d 1567, 1572 (11th Cir. 1985).  The Supreme Court has held that "the due process rights of a [detainee] are at least as great as the Eighth Amendment protections available to a convicted prisoner." Revere v. Mass. Gen.

---

[1]. Both sets of Defendants have illustrated the unique position that Georgia Counties and Sheriffs find themselves in when it comes to enforcing federal constitutional rights. According to the Eleventh Circuit, the two are separate distinct entities under state law and have no overlapping control over the actions of the other.  Manders v. Lee. 338 F.3d 1304 (11th Cir. 2003) (Sheriff's authority derives from state).  It is argued by the Defendants that the result is that the County cannot enforce policy over the Sheriff and the Sheriff cannot secure funding, and neither takes responsibility for any alleged constitutional violations of the County Jail.

The Court notes, however, that the Eleventh Circuit confined the Manders decision, and its progeny. It specifically limited the decision/holding to the issue of Eleventh Amendment immunity in the context of Sheriffs being sued for the alleged specific unconstitutional misconduct directed towards an individual or small group usually involving one incident.  The Manders' court pointed out that it was not deciding the broader question of liability between a Sheriff and County when it came to certain issues such as jail conditions. Neither is the question specifically before the Court at this time, nor does this Court intimate or decide how or if  Manders will effect such a question.

Hosp., 463 U.S. 239, 244 (1983)

According to the Government,  Defendants' alleged conduct specifically violates the Constitution because they display deliberate indifference to inmates' basic needs.  See Kelly v. Hicks, 400 F.3d 1282, 1284 (11th Cir. 2005)(per curiam) (applying deliberate indifference standard to medical care); Johnston v. Crosby, 135 Fed.  Appx. 375, 376-77 (11th Cir. 2005) (per curiam) (protection from harm); Chandler v. Crosby, 379 F.3d1278, 1289 (11th Cir. 2004) (environmental health and safety); Hadix v. Johnson, 367 F.3d 513, 525 (6th Cir. 2004) (fire safety).  To establish deliberate indifference to constitutional rights, the Government must prove: (1) the existence of an objectively serious condition; (2) that Defendants have subjective knowledge of a substantial risk of serious harm to the inmates arising from that condition; and, (3) that Defendants' disregard of the risk is more than negligent.  Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004).

It is not necessary to establish actual harm to demonstrate a violation of the Constitution.  See Farmer v. Brennan, 511 U.S. 825, 845 (1994).  Rather, Defendants are required to "protect . . . [Jail inmates] against sufficiently imminent dangers as well as current [harm]."  Helling v. McKinney, 509 U.S. 25, 34 (1993).  "It would be odd to deny [relief] to [a litigant] who plainly proved an unsafe, life-threatening condition in [a] prison on the ground that nothing yet had happened to [the inmates]."  Helling, 509 U.S. at 33.  Deliberate indifference can be established by showing that Defendants knew of a need to take action but consciously chose not to do so.  See Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998).  Where, as alleged in the present case, there are "institutional level challenges to [Jail conditions], systemic deficiencies can provide the basis for a finding of deliberate indifference."  Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir.1991). In reviewing conditions at the Jail, this Court should examine the totality of the circumstances to determine if a constitutional violation has occurred.  Wilson v. Blankenship,163 F.3d 1284, 1292 (11th Cir. 1998). Lack of funds is not a defense to or legal justification for unconstitutional

11

conditions of a jail.  Moore v. Morgan, 922 F.2d 1553, 1557 n.4 (11th Cir. 1991).  Even if a defendant argues that it is planning or working towards construction of a new jail to remedy the unconstitutional conditions at the current facility, the failure to implement interim measures to alleviate these conditions demonstrates deliberate indifference.  Hale v. Tallapoosa County, 50 F.3d 1579, 1584 (11th Cir. 1995).

As noted previously, the TCBOC does not dispute that the conditions at the Terrell County Jail are unconstitutional.  In other words, the TCBOC does not dispute any of the factual allegations of the Government and concedes that there are no factual issues in dispute that lead to the conclusion that the conditions at the Jail are unconstitutional.   TCBOC even admits that it is planning to build a new facility in the future because the present facility is inadequate.  Their only dispute is with the Sheriff and to what extent they can control policy at the jail.[2]

A review of Sheriff Bowens' response brief shows that he too does not dispute the Government's facts as they relate to the conditions at the Jail.  Sheriff Bowens blames almost any and all problems with the conditions of the Jail and care for the inmates on the lack of funding from the TCBOC.  As with the TCBOC, Bowens' dispute is not with the Government's facts or the majority of its allegations, his dispute is with the TCBOC.  Sheriff Bowens maintains that the Jail and the Sheriff's Department are underfunded and that the TCBOC is not entitled to any control over policy at the Jail, and necessarily the Sheriff's Department.

Bowens, however, does contest in a cursory manner and as the facts might effect the ultimate remedy, some of the allegations of the Government's complaint and assertions.  In general, Bowens maintains that he was not deliberately indifferent to the safety, health and welfare of the inmates of the Jail. Specifically, Bowens argues that conditions at the Jail can be attributed to the "TCBOC's failure to increase starting salaries for jailers [and the

---

[2].  As stated *infra* and discussed more fully *supra*, that issue is not before the Court.

salaries] crippled Sheriff Bowens' ability to hire and/or retain sufficient staff." Other than briefly pointing out what he did to inform the TCBOC of staffing problems and the fact that because of allegations against the County of racial discrimination the starting pay was increased, Bowens does not argue the point any further.

In addition, Bowens argues that he was not deliberately indifferent to the medical needs of the inmates because "Sheriff Bowens' efforts to provide adequate medical care to inmates were rebuffed by the TCBOC." Specifically, he argues that he made a recommendation to the TCBOC to hire outside medical staff to provide care for the inmates, but the recommendation was rejected or rebuffed. Further, Bowens argues that he tried to hire a physician's assistant to provide medical care, but this too was not approved by the TCBOC. Again, as with all of the allegations addressed by Bowens, he does not so much contest the facts but attributes any constitutional deficiencies in the conditions at the Jail to the TCBOC.[3]

Other than these isolated arguments, Bowens, does not address or contest any other allegation made by the Government. Bowens' real dispute with the Government's allegations are not with the facts that show that the conditions at the Terrell County Jail are unconstitutional, but with the ultimate conclusion of whether he bears any responsibility for the conditions. The extent of Bowens' or the County's liability, or the effect of said liability on the remedy, is not squarely before this Court, but it is clear that the Government has carried

---

[3]. While funding of the Jail and control of policy are legitimate issues raised by all of the parties, Bowens ignores his responsibilities as Sheriff and Jailor of Terrell County. See O.C.G.A. §§ 42-4-1 through 42-4-71 (statutory duties of sheriff as it relates to jails). For example, the Sheriff is responsible for staffing the jail in a manner to ensure the safety of the inmates. If he concludes it takes a POST certified officer to open a cell door, then he must adjust the scheduling of his POST officers to be on duty at the jail at all times. As argued correctly by the Government, there is no excuse for an inmate to suffer serious harm because the jailor on duty was not authorized to open a cell door to provide assistance. The Government's statement of facts contains a plethora of examples where Bowens could have exercised his duties irrespective of funding issues.

its burden of showing that the conditions at the Jail are constitutionally deficient.  Further, the TCBOC does not dispute the Governments assertions of fact and in fact, agrees that the Jail, as a whole is constitutionally deficient.  Bowens does not deny that the conditions at the Jail are constitutionally deficient.[4]  Instead, he attributes the fault for any and all constitutional deficiencies to the TCBOC for failure to provide him with adequate funding.

Accordingly, the Court finds that the Government has carried its burden of proof of showing (1) the existence of objectively serious and  dangerous conditions; (2) that both sets of Defendants (Bowens and TCBOC) have subjective knowledge of these substantial risks to the inmates; and (3) that both sets of Defendants have disregarded these risks in more than a negligent manner.  As such, the Court finds that there is no genuine issue of material fact concerning  whether the  conditions at the Terrell County Jail are unconstitutional and the Government is entitled to judgment as a matter of law.   Therefore, the Government's motion for summary judgment for violation of the inmates' rights to be free from serious risks of harm while incarcerated at the Terrell County Jail (Doc. No. 46) is **GRANTED.**

The Court by separate order, shall issue instructions to the parties concerning further proceedings, briefing and  hearing on the issues of:  (1) the Sheriff's and/or the TCBOC's liability or responsibility for the unconstitutional conduct; (2) the proper remedy; and (3) if necessary, the Sheriff's and/or the TOBOC responsibilities in implementing the Court's remedy, other subsequent necessary orders or appropriate relief.

**SO ORDERED**, this ___29th___ day of September, 2006.

___/s/W. Louis Sands_____
**W. LOUIS SANDS, JUDGE**
**UNITED STATES DISTRICT COURT**

---

[4]. Even if Bowens' brief and objections to the Government's statement of facts can be read as placing certain alleged unconstitutional conditions or facts in dispute, the overwhelming evidence is that the overall conditions at the Jail are unconstitutional.